Good morning. May it please the Court, my name is Ryan Norwood. I am an attorney with the Federal Defender. I represent the petitioner in this case. I aim to preserve about a minute of my time for rebuttal. The petitioner, Hugo Israel Kavouec, was a teenager when he was convicted. He is not able to write or speak English. He had lived in this country for about two years before his arrest. He has no familiarity with the American justice system and he has been moved about five times in five years during the times that he was in prison. Because of these extraordinary circumstances and despite his diligence, he was not able to file a petition in the normal one-year time limit. Mr. Norwood, can we just kind of cut to the chase on this thing? I gather that the State admits that Lee is binding that the District Court applied the wrong standard in saying that under Schlupf there was no possibility that you could toll the statute. Nevertheless, I find your client's equitable tolling claim to be based on double hearsay and absolute humbug. So what do we do in this? Do we send it, if I'm understanding this correctly, do we send it back to the Court to apply the correct standard knowing that it's not going to get anywhere, or should we rule on it here if things are as they at least seem to be to me? A few things, Judge Smith. First, I've filed a motion to file a supplemental reply brief to address some of these arguments that the State's making for the first time in its supplemental answering brief. So there are some points that I think the Court should consider and it should consider this brief. I think the best course of action is to remand it back to the District Court simply because they never reached this issue at all. Right. And I agree with that. That really would be unusual for us. I mean, this happens sometimes. There's intervening law. We've had other cases, Lee-related cases, that we sent back to the District Court so it would come up on a full record. The point, the other point I would make, though, in response to some of your specific concerns is, you know, we're dealing with an actual innocence inquiry, particularly in a plea context. The problem with this case, you know, isn't, is the case for actual innocence isn't based just on these new things that we've submitted. One of the problems with this case is that even if you look at everything the government has and if you believed all of it, it's not at all clear that Mr. Cogweck is actually guilty of any crime. But he pled guilty. He pled guilty because he misunderstood what the nature of this offense was. Well, but that, this is an AEDPA case. We're, I mean, ultimately, even if you pass through the gateway, you still have to, you have to get through AEDPA. And in this particular case, most of what you've talked about, as you know, as a very able lawyer are not going to get you anywhere. So I guess what I'm wrestling with, I mean, my, my initial input is, thought is, we don't have any choice. We've got to send this back to the District Court. But I'm just struggling with the fact that I don't see how you're going to get anywhere. I mean, you just blocked every which way you go under AEDPA. So if that's the case, isn't it kind of a waste of everyone's time to send it back to the District Court? Admittedly, the District Court got it wrong. It got the standard wrong. And I suppose we may have no choice but to send it back. But how do you get past AEDPA's requirements to get anywhere here? You still have to prove this. I wrote a case called Smith v. Baldwin on somewhat similar facts like this. And I, I just don't see it. I don't get it. Help me with this, will you? Because I'm, I'm, I've an open mind. I want to, I want to be able to help if I can. But I, right now I'm looking at a situation where the District Court got it wrong, but you're not going to get anywhere. This is a case involving an extraordinarily unsophisticated defendant who in essence railroaded into accepting a plea to a life sentence because he didn't understand what was going on in the case. And that's, that, that, those are the underlying claims in the petition. That's the basis of the actual innocence inquiry. It was something that was never considered by the District Court in the first instance. We probably get about 150 just like that every year. Please, just like that. And we reject them almost always because of AEDPA. So what's different about this? I, I don't think the Court sees 150 cases like this. I mean, this is a situation where I mean, I mean where, you know, I didn't understand. I didn't understand the language. They railroaded me. That's what I'm talking about. Not the exact sub-details of this. Just as an example, I mean, Mr. Cogweck was convicted of serving a life sentence on a kidnapping charge that's based on him supposedly putting this child in a van. Uh-huh. The child said several times at her preliminary hearing when she testified that she was never in this van. The defendant's lawyer said at the time of the plea that he didn't believe that there was a kidnapping charge there, but that he was had, she was going to have the client plead to it anyway. Mr. Cogweck during the plea was saying that he, that he never touched this child in an inappropriate matter, in an inappropriate manner. I mean, there are some very exceptional circumstances in this case that deserve a very careful review. I think they deserve a careful review, but I was trying to figure out to the extent we might do it on appellate review, which we probably won't. You have this odd circumstance of the way Schlepp is worded, and this isn't really new evidence, most of it. I mean, it's kind of, it's old evidence recast or brought forward, and so if it goes back under Schlepp, you have both the guilty plea issue or difficulty hurdle, but then you also have the characterization of what evidence would really be admissible now under the Schlepp. How would you overcome those barriers? There's a United States Supreme Court case that was mentioned in the State Supplemental Answer, and that I discussed at some length in this reply brief that I wish to file. I think it's called Bowsley v. United States that deals with how you conduct an actual innocence inquiry in the plea context. Correct. What's interesting there is they adopt the Schlepp standard, but they don't adopt the Schlepp that talks about new evidence, probably because they recognize that, you know, this line between old and new evidence doesn't work as well when you don't actually have a trial. So the standard is, you know, the government's allowed to make whatever kind of showing it has based on whatever evidence it had in the proffer or whatever else to show that the defendant's guilty, but it wouldn't necessarily depend upon new evidence. I'm happy to talk about the actual innocence issue, but I would like to get to the issue that was originally certified having to do with equitable tolling based on extraordinary circumstances. Right. And so the question we have there is, it seems that the law in our circuit is that you don't, even if we give your client the benefit of equitable tolling, we don't really just add these up and end up in the same place you would be as statutory tolling. And so we have a situation where I believe it's four months after the date that he filed, and the district, you know, the court says, well, that's, even if you give the benefit of equitable tolling, that's not fast enough because other people only have a year. So why does this guy get all that benefit plus the four months? So in the context of our precedent, some of which, as you know, I may have disagreed with, but that's where we are, how do you fit his case in here? Well, respectfully, I don't think it's a matter of Ninth Circuit precedent. In fact, I think our precedent implicitly, the Court's precedent implicitly does recognize a stop-the-clock rule. There are a number of cases that I've cited in my opening brief and my reply brief where there is a significant gap of time between the time that the extraordinary circumstances end and between when a federal petition is actually put on file, where there's essentially no problem found with this. Espinoza-Matthews, there's a gap of either two months or five months. Porter v. Olson, there's a gap of nine months. The general rule that this Court and the United States Supreme Court has recognized in equitable tolling is that equitable tolling stops the clock. And the point is not to give a petitioner like Mr. Cogweck more time. It's to give him the same amount of time that anyone else would have. What about the fact that he was able to file this State petition in the middle of these various periods, and there's no reason he couldn't have filed this Federal petition as well, so that the Spanish language thing, at least in terms of filing the petition, kind of falls through the cracks? There was a time when he did have some assistance in the middle of this period we're alleging equitable tolling where he promptly got a State petition on file. That time would be covered by statutory tolling. The reason he couldn't file a Federal petition during that time was that it would have been utterly futile because he had nothing exhausted yet. If he had filed a Federal petition with nothing exhausted, this Court's precedent would have required the district court to summarily dismiss his petition. It's really no different. He could have a stay in a bay at that point, couldn't you? He couldn't have even got that. I mean, if you have a mixed petition where you have at least one unexhausted claim, you might be able to get that. Right. Where you don't, then you're out of luck. In fact, it's the same thing. And I guess another question I have, and this sort of goes to the evidence put forward, he kind of says in very generic terms, well, I couldn't get assistance, but didn't really say, well, here's what I tried to do or here's what I did, which most of these tell us with more detail other than I just couldn't do it. Does he meet our standards in that regard? His proffer is no less detailed than that involved in Mendoza v. Cary, where the Court sent it back for hearing. What Mendoza says is that even that, even if the proffer is unclear, that there still needs to be a hearing to develop this if there are circumstances that could be consistent with diligence. Now, what the district court heard was the opposite. It imagined that there could have been circumstances inconsistent with diligence and denied the petition. That's not the proper inquiry under Mendoza. Mr. Kahuek alleged enough to get a hearing and that these factual disputes that have been brought forward by the district court were not consistent with diligence. The district court heard that Mendoza's proffer is no less detailed than that involved  Does he meet our standards in that regard?  What Mendoza says is that there still needs to be a hearing to develop this if there  That's not the proper inquiry under Mendoza.  Does he meet our standards in that regard? both in order to meet the standards of the District Court that are outlined in the trial and the Federal Abuse Petition on time. The first is whether he's entitled to equitable tolling. The second is whether he can meet some kind of actual innocence gateway as an exception to the statute of limitations. With respect to the actual innocence inquiry, respondents would argue to this court that there is no reason to remand this case to the District Court for two reasons. You do agree the District Court did not apply the correct standard, right? The correct legal standard? The District Court applied the correct standard that existed at the time. Right. We understand that, but I mean, yeah, right. So there is an actual innocence exception to the statute of limitations. This Court has never decided that that always applies in the context of a guilty plea. So before remanding to the District Court, it might be pertinent for this Court to decide whether it should even apply to someone in Mr. Irgil's position where he made a choice not to have a jury decide whether he was guilty. But how would, you know, there's guilty pleas and there's guilty pleas. So in other words, we would be deciding an issue without a factual record to really peg it because there may be varying circumstances, I don't know, as to when Schlepp would or wouldn't apply in the case of a guilty plea. Well, the case in which it was applied by the United States Supreme Court was a case where the conduct to which the Petitioner pleaded guilty was no longer criminal. Right. That's a completely different situation than we have here where whatever he pled to is still a crime, he's guilty of that crime, and Respondent's position is that in that circumstance, there should not be an actual innocence gateway. A Petitioner made a conscious choice, was placed in the position of saying, if I'm innocent, I need to have a jury decide whether I'm guilty or innocent, and he gave up that right and pled guilty for the benefit of a bargain. Mr. Israel, in this situation, received a sentence of 5 to 20 years for his sexual assault. That's not the maximum sentence, and he's already on parole from that sentence. He's no longer serving his sentence for sexual assault. He got a benefit from his guilty plea. He should not be allowed to challenge the evidence against him when he deliberately gave up his right to challenge that evidence in court. So for that reason, we would argue that he should not be remanded to the district court. And second of all, even if this Court agrees that that gateway is somehow open to him, the evidence that he proffers clearly does not mean any – there's no reason to send it back for any evidentiary factual development. If you accept everything that he's given us as true, it doesn't entail him or demonstrate that he's actually innocent. There is no reason to remand this for an actual innocence determination back to the district court. Now, the Supreme Court and our Court has indicated that hearsay is admissible at this stage. You're correct, Your Honor. I don't know whether it makes any difference if it's double hearsay. But in any event, if you accept the double hearsay, the medical report showed no penetration. There is not. What is the State's – have you seen the medical report? No, and I don't need to see the medical report. He wasn't – he didn't plead. Have you seen it? No, I have not. Do you have any knowledge of what's in it? No, I do not. Why shouldn't the State supply it? Because that medical report is irrelevant. He's not convicted. The medical report is irrelevant. Why is it irrelevant? Because he was not convicted of sexual assault based on a theory that he actually physically penetrated the 4-year-old girl that he assaulted. He, at his guilty plea hearing, denied that he penetrated her. He's consistently denied that he penetrated her. His attorney turned to him at the guilty plea hearing and said, would you agree that you touched her inside her vaginal lips when you had no legal authority to do that? He said, yes. In Nevada, sexual penetration is any penetration, however slight, of the opening. So whether or not there's any medical evidence of some harsh physical penetration of this victim, it is irrelevant to the fact that he's guilty of the crime of sexual assault as defined by Nevada law. So the medical report is irrelevant. There's no reason for this court to remand to the district court for an actual instance of determination. He's so far from making any kind of showing that would satisfy the SHLEP requirements. So your stand is on Nevada law as to what constitutes the crime? That's correct, Your Honor. All right. As long as we understand it. I want to ask you a quick question here. In the case of Smith v. Baldwin, we noted this is a case where there was a guilty plea. We say, for purposes of our analysis, we assume without deciding the actual innocence gateway is available to this guy's name is Smith. We do not determine whether the SHLEP actual innocence gateway always applies to practitioners who plead guilty or no contest. But in this case, the State's not ready to make the argument. Most importantly here, Smith has failed to satisfy, more importantly, Smith has failed to satisfy the requirements of SHLEP. Thus, the question is ultimately irrelevant for purposes of our habeas corpus petition. So we made the determination at the court of appeals level. We did not send it back. Because he couldn't meet SHLEP. Because he couldn't. Because of the situation, the record was clear that he could not meet SHLEP. That's correct, Your Honor. Now, this is the same issue that I think that Judge McKeown was talking about. That if we determine that because of the peculiar language of SHLEP that Mr. Israel cannot meet it, then even if the district court applied the wrong standard, are we obliged to send this back? No. The case law is extensive that an appellate court can affirm a decision of a lower court, even if its decision was based on the incorrect reasoning, as long as the result was correct. And here, the denial of his claim was the correct result. And this Court can affirm, especially here where the evidence is just not there. Well, Bowsley, the Court did distinguish in accepting a guilty plea SHLEP challenge. They said they distinguished it from a criminal who pleaded guilty after being correctly informed as to the essential nature of the charges against him. So in this case, to your understanding, is there any argument that he was correctly informed about the charges? Yes. I mean, it was the – his argument is that he was not aware that penetration was an element of sexual assault. And the evidence that we submitted in our supplemental excerpts of record clearly demonstrates that this was the main issue before trial, was whether there was enough evidence that he penetrated the victim. This was litigated with him present. He signed off on the petition. He was present at the hearing on the petition. He knew that that was the main issue. And after his petition was denied, he made a choice to plead guilty and receive a benefit from the State for that guilty plea. That's the situation we have here. The other thing that's notable about Bowsley is that Justice Scalia descended from that decision saying that the guilty – raising concerns about a guilty plea context, actual instance gateway. The majority rejected his concerns, in a footnote, based upon the fact that this was a Federal – a challenge to a Federal conviction. Their explicit reason for rejecting his concerns was that this was not a 2254 position challenging a State conviction. His concerns are valid in the context of the principles of Federalism and comedy and finality that are in the epic context here. And so because the majority rejected them in Bowsley does not mean that they don't apply in the situation that we're faced with here. And going to the equitable tolling, this case seems awfully close to Mendoza v. Carey. Why wouldn't that govern here? This case is easily distinguishable from Mendoza for one reason. Which is? I'm turning my pages. I apologize, Your Honor. In Mendoza, this Court set out the minimum required to obtain an evidentiary hearing on a claim of a non-English speaker obtaining equitable tolling. And said, at a minimum, that person must demonstrate that during the running of the EDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate. Mr. Israel, in this case, obtained translation assistance from an inmate prior to the expiration of his Federal limitations period. That inmate helped him prepare a timely State habeas petition. So under the plain language of Mendoza, Mr. Israel did not meet the minimum standard for an evidentiary hearing. Whereas he says, well, he filed the State one, but needed more time for that to get denied and exhausted so he could then file a Federal one. He still hasn't filed an exhausted Federal petition. I mean, that's not an issue before this Court, but his petition isn't exhausted at this point either. So that's kind of a strange argument to make. It's defaulted, correct? He didn't ever present it in a personal – he presented it to the management court in a procedurally deficient manner. So therefore, it's never been fairly presented to them. So the position – our position at this point is that it's not exhausted at all. But he obtained the assistance he needed before the time limitation ran out. He could have had that inmate prepare a Federal petition that had the same claims as the State petition, and as soon as the State petition was denied, filed a Federal petition. He could have just slapped a different cover sheet on the front of that State petition and filed it with the Federal court. Even if these petitions would have been denied as unexhausted, as my co-counsel or opposing counsel suggests, in all the cases where those situations arose, that was evidence of diligent efforts. Here, where nothing was filed and rejected, there's no evidence that he was even trying to file a Federal petition. Unless the Court has any further questions, I submit on that. Thank you. Thank you. Thank you. Blivey, any time remaining, Your Honor? Yes. We'll give you a minute for rebuttal. Thank you. The distinction that the State noted with Mendoza isn't a distinction. In Mendoza, the petitioner had assistance 11 months before he filed his Federal petition. What he was doing during that time was the same thing that Mr. Israel was doing. He was filing a State petition. So that isn't a distinction. This case is really on all fours with Mendoza. The point I want to emphasize here is that there is no case in the Ninth Circuit that rejects the stop-the-clock rule. I think even Lot v. Mueller, the case in which you issued a concurrence, doesn't necessarily reject it. In that case, as in many other cases, you know, the petitioner had plenty of time, both before and after. You know, he only claimed a period of 82 days that were told by extraordinary circumstances, which means that he had almost a year before and after that time to file his petition. And the Court still found that he could be entitled to tolling. I think if there was any doubt about this matter, it was finally resolved in Holland v. Florida two years ago, where the Supreme Court emphasized that the AEDPA statute of limitations should be treated just like any other statute of limitations, which means that it can be equitably tolled. It means that the same equitable tolling rule that applies in any other circumstance should apply to habeas corpus proceedings as well. Thank you. I'll submit the case. Thank you. I'd like to thank both of you for your arguments this morning. Israel v. Smith is submitted.
judges: Noonan, McKeown, Smith